ROACH *v.* KIRK.

5-1512                                    311 S. W. 2d 525

Opinion delivered March 31, 1958.

*Ben B. Williamson,* for appellant.

*Caldwell T. Bennett,* for appellee.

J. SEABORN HOLT, Associate Justice. This is the second appearance here of this case. On the former appeal we reversed the judgment and remanded the cause to the circuit court for trial on its merits, *Kirk* v. *Roach,* 226 Ark. 799, 294 S. W. 2d 335. A school election contest is involved, and specifically the validity of certain alleged absentee ballots. Following remand, trial was had before the court sitting as a jury, and after hearing the testimony of numerous witnesses on the validity of 26 absentee ballots cast in the election, the court declared appellee Kirk to be the duly elected school director. The finding in part contained these recitals: "The court further finds that 22 of the 27 absentee votes were illegally cast for Roach, and deducting those 22 from Roach's total of 127 (which includes Miller's vote) leaves a net result of 105 votes cast for Roach and 107 cast for Kirk, from which the court rules that Kirk is the duly elected school director for Southside School District No. 3, Independence County, Arkansas." A judgment was entered in accordance with the above finding. This appeal followed.

For reversal appellant relies on these points: "1. The court erred in its holdings, findings and judgment that the following votes cast in the Southside School Election on March 17, 1956, were illegal votes and further erred in casting, or throwing said votes out and deducting same from the total received by appellant, Haskell Roach, in said election, to-wit: 1. Lorn Mitchum, 2. J. S. Galvin, 3. Richard Hartlien, 4. Acey Duncan, 5. Mrs. Acey Duncan, 6. Y. J. Barber. 2. The court's holdings, findings and judgment were contrary to and not supported by a preponderance of the evidence adduced on the part of the appellee, Elmer Kirk."

Our statutes, Secs. 3-1123—37, Ark. Stats. 1947, provide the procedure to be followed in absentee voting: "3-1124—Persons qualified as absentee voters— . . . (a) Any person who will be unavoidably absent from his voting place on the day of election. (b) Any person who, because of illness or physical disability will be unable to attend the polls on election day . . . 3-1125—Applications for absentee ballot—Manner of

making—. Applications for absentee ballots may be made in one of the following three (3) ways, in no other manner, and then only on the form set out in this Act (Sec. 3-1123—1136): (a) In person at the office of the county clerk of the county of r e s i d e n c e of the voter, (b) By mail; provided that, applications by mail must be received in the office of the county clerk of the county of residence of the voter not sooner than fifteen (15) days (twenty days in the case of persons outside the continental limits of the United States), nor later than one (1) day before the election. When there are first and second primaries, one (1) application may be used to request ballots for both primaries if the request is made as provided on the application form. (c) By delivery of the application form to the office of the county clerk of the county of residence of the applicant not later than 1:30 p.m. on the day of the election. Delivery may be made only by the elector, or the husband, wife, son, daughter, sister, brother, father or mother of the applicant. . . . 3-1128—. . . The County Clerk, if satisfied that the applicant for absentee ballot is a qualified elector in the ward, precinct or township in which he claims to be a resident, shall deliver, or cause to be delivered, or mail to the applicant: (a) An official ballot for each election named in the application . . . (d) A blank statement in the following form: 'I, _____, do swear that on the date of the election to be held _____, 19____, I will be unavoidably absent from my voting precinct because of _____. I am a qualified elector of the _____

(state reason)

(ward, precinct or township) of _____,

(city, town or county)

Arkansas. I have enclosed my ballot, duly marked, in a small envelope which I shall place with this statement and my ballot stub in a large envelope. I will not vote again in this election.

_____
(signature)

_____
(address)

. . . 3-1130—Methods of absentee voting.—Absentee voting may be accomplished in one of the three (3) following methods, and in no other manner: (a) On ballots cast in the office of the county clerk in the county of residence of the voter during regular business hours of any day not earlier than the fifteenth (15) day before election day, not later than 6:30 p.m. on election day. (b) By ballot cast by mail which must be received in the office of the county clerk of the county of residence of the voter not later than 6:30 p.m. on election day. (c) By delivery of ballot to the office of the county clerk of the county of residence of the voter not later than 6:30 p.m. on election day. Delivery may be made only by the husband, wife, son, daughter, sister, brother, father or mother of the absentee voter."

In election contests such as this the findings of the trial court sitting as a jury have the same force and effect as the verdict of a jury and when supported by substantial evidence we affirm. See *Phillips* v. *Melton*, 222 Ark. 162, 257 S. W. 2d 931. After carefully considering all of the testimony relating to each of these votes, we have concluded that the testimony was ample to support the court's findings and the judgment rendered.

The vote of Richard Hartlien. The evidence shows that on the date of the election here, Hartlien worked in a local store, but made no attempt to cast his vote at the polls. He was not ill or physically disabled from attending the polls and the store in which he worked was in the same city block as the courthouse and county clerk's office. A friend, Darb Hallmark, who was in no way related to Hartlien, at Hartlien's request, secured for him an application (already filled in) along with an absentee ballot and return envelope. Hartlien marked his ballot at his home, placed it in the envelope, sealed it, put a three cent stamp on it and gave it to Hallmark to mail for him. It thus appears that Hartlien did not comply with any one of the three methods permitted in *Sec. 3-1130 above*; (a) he did not apply for or cast his ballot in person at the county clerk's office, (b) he did not cast his ballot by mail and (c) he did

not deliver his ballot to the office of the county clerk of the county of his residence by anyone related to him as required by this section.

Lorn Mitchum. The evidence shows that Mitchum lived on the McHue Road about 2½ miles from the voting place for the Southside School District; that on March 13, before the election on the 17th, while he was walking down the street in Batesville, after having visited his sick father-in-law in a hospital there, he was accosted by Johnny Mitchum and Darb Hallmark and given an application and ballot for voting absentee. He had not requested that they secure a ballot for him; they had all forms ready at their truck; they did not leave with his application and return with the ballot and statement but produced all three at the same time. He was not ill or physically disabled from attending the polls; that he attended to his business affairs in addition to visiting his sick father-in-law. He was at home on election day, had breakfast there, visited his father-in-law sometime that day and had supper at his own home on that day. We hold that the trial court on this evidence, was justified in holding that Mitchum was not unavoidably absent because of illness or physical disability and unable to attend the polls, as required in *Sec. 3-1124 above.*

J. S. Galvin. This voter was held not to be a qualified absentee voter for the reason that the evidence did not show that he was unavoidably absent from the voting place, nor was he unable to go to the polls because of physical disability. The evidence showed that he was in the school district in question on the morning of the school election but that he went to Batesville, Arkansas, a distance about equal to the distance to the polls; that he did not work that day. While in Batesville, Johnny Mitchum took him to the county clerk's office, an application for absentee ballot was filled out for him, he did not know its contents. A paper was given him to sign and he signed it and he voted an absentee ballot. "Q. Sir, this application and the affidavit which has been filed states 'because of working I will be absent from voting precinct.' A. That's right . . .

Q. What did you mean on your application when you said you would be working and unable to attend the polls. A. I don't know about that. Q. Were you working that day? . . . A. No, I think I was in town here. Q. Who took you to the courthouse (in Batesville) to get these papers? A. I went up there with Johnny Mitchum; Johnny helped me out with it. Q. Where did Johnny find you? A. Out here on the street, I told him I wanted to vote; he said I could vote absentee. Q. So he just put 'working' for the reason for being absent? A. Yes, I was over here in Batesville anyway.'' Galvin ate his supper at home that night. We think, as indicated above, that the court was warranted in finding this ballot illegal.

Acey Duncan. The evidence shows that the name of Acey Duncan does not appear on the list of applications for absentee ballots, required to be kept by the county clerk under *Sec. 3-1127 above.* Duncan went to the county clerk's office and signed an application for an absentee ballot. The application (required under Sec. 3-1126 above) for absentee ballot which he signed left entirely blank his reason for being absent. The signed application provides: ''County Clerk:

> Ind. County ............................County
> Batesville ........................., Arkansas

> Because of .............................................I will be ab-
> (State reason for absence)

sent from my voting precinct on the date of March 17 election to be held on the 17 day of March, 1956.''

We hold that the failure of Duncan to state in his application the reason for being absent disqualified him to vote an absentee ballot under Sec. 3-1124 (a) above, which provides that to be entitled to an absentee ballot he must first show that he would be ''unavoidably absent'' from his voting place on the date of the election. As indicated, he gave no reason at all for being absent. Clearly, we think the court was warranted in finding this ballot illegal.

Mrs. Acey Duncan. We do not detail the evidence which the court found to be sufficient to invalidate Mrs. Duncan's ballot. It suffices to say that after carefully reviewing all of this evidence we hold that it was sufficient to support the judgment of the court declaring it invalid.

Y. J. Barber. The evidence r e l a t i v e to this vote is to the following effect. On the day of the election (March 17, 1956) in School District No. 3, the district in which the election here was held, Barber was living in School District 45, where he had moved about February 1, 1956. He testified "when I moved over there I planned to stay over a pretty good period." He moved his entire family and household furniture. From this testimony we think the court was justified in finding that Barber had moved out of District 3 into District 45, had resided there more than one month prior to the Southside School election, that his intention was to move and establish his residence in District 45, and that he was not a qualified voter in School District 3 under Sec. 3-101 Ark. Stats. 1947, which requires residence "in the voting precinct, or ward, one month next preceding any election." We think since we are holding that he would be disqualified and barred from voting in District 3 he could not qualify as an absentee voter under *Sec. 3-1124 above.*

On the whole case, finding no error, the judgment is affirmed.

WARD, J., not participating.