McClendon v. McKeown.

5-1848                                        323 S. W. 2d 542

Opinion delivered May 4, 1959.

*Robert B. Gibson*, for appellant.

*Ed Trice* and *William H. Drew*, for appellee.

Ed. F. McFaddin, Associate Justice. The question to be decided is whether appellant's complaint stated a cause of action. In the Democratic Primary Election on August 12, 1958 appellant and appellee were rival candidates — and the only candidates — for the nomination of Mayor of Dermott. On the face of the returns, the vote was 509 for appellee, McKeown, and 497 for appellant, McClendon. On August 28, 1958 McClendon filed his petition[1] in the Chicot Circuit Court (under § 3-245

---

[1] McClendon first sought a recount before the Democratic Central Committee of Chicot County (under § 3-237 Ark. Stats.), claiming there had been twenty-three illegal votes cast and urging that the Democratic Central Committee should open the boxes and cancel the illegal votes; but he never gave the names of the alleged illegal voters. The Democratic Central Committee refused McClendon's request and certified McKeown as the nominee. We held in *McLain* v. *Fish*, 159 Ark. 199, 251 S. W. 686, that the statute, which is now § 3-237 Ark. Stats., was directory and not mandatory. So the failure of the Democratic Central Committee to grant McClendon's request to open the boxes and cancel the alleged illegal votes was something that could be reached by an election contest under § 3-245 Ark. Stats., which was the course that McClendon pursued.

Ark. Stats.) to contest the nomination of McKeown. The Circuit Court sustained a demurrer and dismissed Mc-Clendon's complaint; and this appeal ensued.

We have a number of cases concerning the sufficiency of allegations of a complaint in an election contest. Some cases discussing this and allied questions in election contests are: *Gunter* v. *Fletcher*, 217 Ark. 800, 233 S. W. 2d 242; *Wilson* v. *Anderson*, 193 Ark. 799, 103 S. W. 2d 63; *Hailey* v. *Barker*, 193 Ark. 101, 97 S. W. 2d 923; *Moore* v. *Childers*, 186 Ark. 563, 54 S. W. 2d 409; *Hill* v. *Williams*, 165 Ark. 421, 264 S. W. 964; *Wassell* v. *Sprick*, 208 Ark. 243, 185 S. W. 2d 939; *Robinson* v. *Knowlton*, 183 Ark. 1127, 40 S. W. 2d 450; *Crawford* v. *Harmon*, 149 Ark. 343, 232 S. W. 427; and *Ferguson* v. *Montgomery*, 148 Ark. 83, 229 S. W. 30.

In *Gunter* v. *Fletcher* (*supra*), the complaint alleged that with the illegal votes discarded the correct vote would have been: for Gunter, 3371; for Fletcher, 3160. We held that a demurrer should not have been sustained to the complaint since the above allegation showed that Gunter claimed to have received a majority of the legal votes cast. But a study of the original transcript in that case discloses that Gunter in his complaint had: (1) given the name of each person alleged to have cast an illegal ballot and the township in which each had voted; (2) stated the name of each person whom it was alleged had voted without poll tax; and (3) listed the name of each of the other voters casting ballots claimed to be illegal. There were several hundred so claimed; and after all of the above allegations, the complaint had concluded with the paragraph numbered 12 which is copied in our opinion. Thus it will be seen that in *Gunter* v. *Fletcher* the contestant gave detailed information of the name and voting place of each person alleged to have cast an illegal ballot.

In *Ferguson* v. *Montgomery* (*supra*), and in *Crawford* v. *Harmon* (*supra*), we pointed out that when challenged ballots were to be discarded — as distinguished from fraud involving the entire box — it was essential that the names of the challenged voters should be given.

In sustaining a demurrer to a paragraph in a complaint we said, in *Crawford* v. *Harmon* (*supra*): ''The paragraph contained no allegations with respect to the names of any of the persons who are alleged to have cast the unsigned ballots''.

With the foregoing as the understanding of our cases, we come to the complaint in the case at bar. McClendon never alleged how many legal votes he claimed that each candidate received: he merely stated how many votes the Democratic Central Committee certified. McClendon alleged that he offered proof to the Democratic Central Committee that twenty-three illegal votes had been cast in the Mayor's race and that the Committee refused to receive such evidence; but McClendon has never given the name of any person alleged to have cast an illegal ballot.[2] He has never stated as a fact that he received a majority of all the legal votes cast in the election; he has merely stated that if the ballot boxes were opened and the alleged illegal ballots cancelled and a retabulation made, he ''. . . verily believes he will have received more votes than L. O. McKeown.'' McClendon has never named any of the persons whose votes

---

[2] We copy now the remaining portions of McClendon's complaint not previously abstracted: "This petitioner states that there were seven persons who illegally voted twice in said Mayor's race and that there were sixteen persons who voted who were not legally qualified to vote due to the fact that they were not residents of the City of Dermott, so as to entitle them to vote; and both votes of the people who voted twice should be cancelled and the one vote of the non-residents should be cancelled; that this Court has the authority and duty to open and examine the election boxes containing the ballots and all other papers or lists in connection with the voting to cancel said illegal votes; that after said cancellation, the Court should make or order a re-count or retabulation of the legal votes received by L. O. McKeown and the legal votes received by Kern McClendon for said office; that after said cancellation and retabulation, the petitioner verily believes that he will have received more votes than L. O. McKeown and the Court should then afford the proper relief; that the petitioner believes the proper relief will be to declare h:m the Democratic nominee and L. O. McKeown should by proper procedure be ousted as the nominee or Mayor holding this office. That said petitioner reserves the right to amend this petition as further evidence might be discovered and the petitioner is making all possible efforts to discover proof of illegal votes at the earliest possible date.

"WHEREFORE, petitioner prays that the Court examine certain votes or ballots cast, which will be named by the petitioner when called upon by the Court, and cancel and hold for naught illegal votes and retabulate the votes and properly declare the Democratic nominee or duly elected Mayor of the City of Dermott, and for any and all other proper relief and costs of this action."

he claims to be illegal; and in his brief in this Court he says:

"The appellant did not call the names of the illegal votes or voters because it is contended it would not have been to his best interest to have voluntarily given the opposition his proof at the time of filing his petition. However, the appellant, in his petition before the Committee and the Circuit Court, stated that he would call and list the names of the illegal voters when called upon by the Court."

It was not the duty of the Circuit Court on its own initiative to ask McClendon to name the persons alleged to have cast illegal ballots: it was McClendon's responsibility to allege a cause of action. His continued failure to name the persons casting the alleged illegal ballots[3] justified the Circuit Court in sustaining the demurrer as such, rather than merely treating it as a motion to make the complaint more definite and certain. In sustaining the demurrer and dismissing the complaint, the learned Circuit Judge delivered a written opinion, which has proved most helpful to this Court; and we copy and adopt as our own excerpts from the said opinion of the Circuit Judge:

"An election contest is an adversary proceeding between a candidate not certified and the nominee who was certified, if there were only two candidates for the office involved. 'The pleadings, in an election contest case, should be sufficiently specific to give reasonable information as to the grounds of contest.' *Robinson* v. *Knowlton*, 183 Ark. 1127, at Page 1133. While it is true a pleading in a contest does not require the same strict technical accuracy in pleading as usually required in a civil action, yet, the original pleading must state a *prima facie* case and no amendment will be allowed which states a new and different cause of action. 'The purpose of the contest is to determine what candidate received the greatest number of votes; and if there are sufficient facts

---

[3] In 18 Am. Jur. p. 372 "Elections" § 298, the text reads: "Nor is it necessary to give the contestee the name of every alleged illegal voter as to whom he proposes to offer proof." But the method of conducting an election contest in Arkansas requires such information to be furnished when—as here—individual ballots are challenged as illegal.

stated to give the other party reasonable information as to the grounds of the contest, then the case should be tried on its merits.' See *Gunter* v. *Fletcher,* 217 Ark. 800, 223 S. W. 2d 242.

"The rule controlling, to determine the sufficiency of a petition to contest an election against a demurrer, is stated in *Hill* v. *Williams,* 165 Ark. 421, at Page 423: 'There should have been an allegation in the complaint showing the number of votes received by each candidate, so that it would appear, after deducting the alleged fraudulent votes from the number accredited to appellee (*contestee here*) that appellant (*contestant here*) would have more votes than * * * his opponent.'

"Bearing in mind what the Court said in *Gunter* v. *Fletcher* (*supra*), that a complaint is sufficient against a demurrer if there are pleaded certain specific irregularities and counting of votes, if the evidence sustains such allegations, that would entitle the contestant to prevail, does the Petition and Affidavit of McClendon meet that test? . . . While the Petition of Contestant recites twenty-three illegal votes were cast in the election under question, it is not specifically alleged that the cancellation of such twenty-three votes would result in McClendon receiving the greatest number of votes cast at such election. The Petition merely requests that the Court make, or order, a recount or retabulation of the legal votes received by each of the candidates, and, 'that after said cancellation and retabulation, the Petitioner verily believes that he will have received more votes than L. O. McKeown, *etc.*' In like wording is Petitioner's prayer for relief.

"Neither the allegations nor the prayer of the Petition set out a *prima facie* case under the procedure and allegations essential to state a cause of action for such an election contest. The Petition and prayer for relief suggest a discovery proceedings or 'fishing expedition' wherein the Court is asked to supplant or substitute the Court for the County Central Committee . . . It is not the duty, or within the power, of the Court within the scope of the allegations and prayer of the Petition herein, to impound and open the ballot box or boxes, and, in

effect canvas the votes cast for Mayor in order to de- clare the nominee. No fraud is alleged against either the election officials or the Central Committeemen. The demurrer of L. O. McKeown is sustained and this action is dismissed at the cost of the Petitioner.''

The judgment of the Circuit Court is affirmed.