Vera B. SIMONETTI *v.* Meyer BRICK

587 S.W. 2d 16

Opinion delivered October 1, 1979
(Division I)

*Rieves, Rieves & Shelton,* by: *Frank C. Elcan,* for appellant.

*Kent J. Rubens* and *Jake Brick,* for appellee.

GEORGE ROSE SMITH, Justice. Vera B. Simonetti and Meyer Brick were candidates for the office of justice of the peace in the Democratic primary held on May 30, 1978. On June 5 Brick was certified as the nominee by a vote of 560 to 558. On June 14 Mrs. Simonetti filed a contest, alleging that six named persons voted for Brick, that they were not residents of the precinct in which they voted, and that their votes should not be counted. Brick's answer denied the allegations of the complaint and asserted that twenty named persons illegally voted for Mrs. Simonetti and that their votes should not be counted. At a two-day trial in November the

court cast out four votes for Brick and three for Mrs. Simonetti; so Brick was declared the winner, 556 to 555. Mrs. Simonetti argues three points for reversal.

First, the statute requires that a contest be filed within twenty days after the results are certified. Ark. Stat. Ann. § 3-1001 (Repl. 1976). On July 18, after the expiration of the twenty days, Mrs. Simonetti filed a petition for leave to amend her complaint, alleging that she had discovered that "numerous other voters" had voted illegally in the election. She did not allege the name of any such voter or that any such illegal vote had been cast for Brick. She merely sought leave to set forth additional names of persons who voted illegally. On August 26 leave to amend was denied by Judge Brown.

Both sides cite our cases holding that it is within the trial court's discretion to allow amendments during the trial that do not change the grounds of contest or unduly delay the trial. *Bland* v. *Benton,* 171 Ark. 805, 286 S.W. 976 (1926); *Ferguson* v. *Montgomery,* 148 Ark. 83, 229 S.W. 30 (1921). The appellant insists that the denial of permission to amend was an abuse of discretion.

We do not think so. In the cases cited the proffered amendments appear to have stated facts asserting a cause of action. That is not true here. A complaint which does not charge that any specific illegal vote was cast fails to state a cause of action. *Cowger* v. *Mathis,* 255 Ark. 511, 501 S.W. 2d 212 (1973); *McClendon* v. *McKeown,* 230 Ark. 521, 323 S.W. 2d 542 (1959). We explained the underlying reason for the rule in *Jones* v. *Etheridge,* 242 Ark. 907, 416 S.W. 2d 306 (1967):

It places no burden on contestants to require them to state the names of the voters who allegedly voted "wet" and illegally and to show that if alleged illegal votes were purged it would change the election results. Before one can in good faith contest an election, he must have knowledge of the persons who voted illegally, some knowledge of how the persons allegedly voted, and he must be able to show that if the votes were purged it would make a difference in the outcome of the election. Otherwise, an election contest would become a fishing

expedition. An election by the people should not be so lightly impugned by those who only hope to find enough information to change the result of an election.

In the case at bar Mrs. Simonetti's complaint properly stated facts constituting a cause of action. The petition to amend, however, wholly failed to supply any information about the many other voters who assertedly voted illegally, nor was it alleged that the purging of their votes would have changed the result of the election. The time for filing a contest had expired. We cannot say the trial judge abused his discretion in denying the petition to amend.

Second, Mrs. Simonetti argues that the trial judge erred in refusing to allow her to ask the witness George Caster how he voted. Mrs. Simonetti did not mention Caster in her verified complaint. Brick, however, alleged in his verified answer that Caster did not reside in the precinct, that he voted for Mrs. Simonetti, and that his vote should not be counted. Mrs. Simonetti, as plaintiff, called a number of witnesses. The court, ruling upon each challenged vote as the trial progressed, found that four voters, all specifically named in the complaint, had illegally voted for Brick. That put Mrs. Simonetti ahead, 558 to 556. She then rested her case. Brick called a number of witnesses, and the court found that three voters, named in the answer, had illegally voted for Mrs. Simonetti. That put Brick ahead, 556 to 555. Brick then rested his case without having called Caster, whom Brick had subpenaed, as a witness.

At that point Mrs. Simonetti, over Brick's objection, called Caster to the stand and, by questioning him, made what was ultimately ruled to be a proffer of proof that Caster had voted illegally. Judge Pearson, who was trying the case, held that he was bound by Judge Brown's order denying leave to Mrs. Simonetti to amend her complaint. On that theory Judge Pearson withdrew his original indicated ruling that Caster had voted illegally and refused to permit counsel for Mrs. Simonetti to ask Caster how he had voted.

In the circumstances the court's ruling was right. The

only verified allegation about Caster in the pleadings was Brick's statement that Caster had illegally voted for Mrs. Simonetti. During the trial in chief Mrs. Simonetti proved her verified allegations, that four illegal voters had voted for Brick. Brick in turn proved his verified allegations, that three illegal voters had voted for Mrs. Simonetti. At that point Brick rested. He had no reason to call Caster to the stand. For the court to have allowed Mrs. Simonetti to challenge Caster's vote would not only have allowed her to amend her complaint, contrary to Judge Brown's earlier ruling, but also have sanctioned a fishing expidition in the guise of rebuttal testimony, because Mrs. Simonetti never at any time alleged that Caster had voted for Brick. Apparently her counsel had no idea how he voted, for there was no proffer of proof that he had voted for Brick.

Finally, Mrs. Simonetti challenged the vote of C.H. Bond, III, on two grounds. First, she insists that Bond, age 20, was not a resident of the precinct on election day. This point presented an issue of fact upon which there is substantial evidence to support the trial judge's rejection of the challenge. Bond had been living with his parents in the precinct, but about a year before the election he dropped out of college and worked for some 14 months on his father's farm about 20 or 25 miles from the family residence. After the election he returned to college in the fall. He testified that although he slept at the farm he still had his room at his parents' home, that all his personal effects except his work clothes were there, that he ate his meals and got his mail at his parents' residence, and that he considered it to be his home. Bond's testimony supports the trial court's ruling.

Second, Bond, in applying for an absentee ballot, gave "work" as the reason for his expected absence from the precinct on election day. It is argued that Bond was not unavoidably absent, as the statute contemplates, because when he left his work at about 6:00 p.m. on election day he could have driven to Marion in time to vote. Ark. Stat. Ann. § 3-903. The trial judge was not required to construe the evidence so narrowly. Bond, in applying for an absentee ballot and voting in advance of the election, could not be expected to know to the minute when he would be able to leave work and

drive to Marion. His good faith is not questioned. We cannot say as a matter of law that his vote should have been rejected.

We do not reach Brick's cross appeal, questioning three votes for Mrs. Simonetti, because she has failed to show on direct appeal that the judgment is wrong.

Affirmed.

We agree. HARRIS, C.J., and HOLT and HICKMAN, JJ.