Durwood KING  *v.* Sam WHITFIELD, Marion Hickey,
Dennis Littleton, Carolyn Doster, and the
Phillips County Election Commission

99-359                                    5 S.W.3d 21

Supreme Court of Arkansas
Opinion delivered November 18, 1999

*David B. Solomon; Roscopf & Roscopf, P.A.,* by: *Charles B. Roscopf,* for appellant.

*Alvin L. Simes,* for appellee.

WH. "DUB" ARNOLD, Chief Justice. Appellant, Durwood King, brings the instant appeal, challenging the circuit court's order dismissing his complaint against Sam Whitfield, the certified winner in a contested general election held for Municipal Judge for the City of Helena, Arkansas, on November 3, 1998. Our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 1-2(a)(4) (1999). Specifically, King asserts that the trial court erred (1) by concluding that it lacked jurisdiction to hear his complaint, and (2) by counting eighty-six absentee ballots cast in favor of Whitfield. We find no merit in appellant's arguments, and we affirm the trial court's decision dismissing the complaint for lack of jurisdiction and for failure to state facts upon which relief can be granted. *See* Ark. R. Civ. P. 12(b)(1), (6) (1999). In light of our holding affirming the trial court's decision to dismiss appellant's complaint, we decline to address the merits of King's remaining arguments.

On the face of appellant's complaint, he alleged that the case presented an election contest pursuant to Ark. Code Ann. section 7-5-801 (Repl. 1993), that both he and Whitfield were candidates for municipal judge, and that appellee Election Commission certified Whitfield as the candidate elected. Additionally, King asserted that eighty-eight of the votes cast for Whitfield were mailed by Nathan Ashwood to the County Clerk in two separate parcels, one containing thirty-nine absentee ballots and the other forty-nine absentee ballots. King alleged that the absentee ballots were invalid because they were not cast in compliance with Ark. Code Ann. section 7-5-411. Consequently, he averred that he received the majority of votes cast and should be declared the municipal judge. Notably, the complaint failed to allege the total number of votes cast, the total number of votes cast for each candidate, and the date the election was certified. King also failed to state the names of the contested absentee-ballot voters.

After reviewing the complaint, the trial court concluded that it lacked jurisdiction because the face of the complaint demonstrated that the action was not commenced within twenty days of the election's certification, as required by Ark. Code Ann. section 7-5-801 (Repl. 1993). Although a review of the record indicates that (1) the election was certified on November 17, 1998, (2) the complaint was filed on November 30, 1998, (3) the Election Commission certified that a total of 2,432 votes were cast in the municipal judge's race, 1,174 votes for the incumbent judge, King, and 1,258 votes for appellee Whitfield, none of these facts was alleged in the complaint. Additionally, the trial court found that the complaint failed to state sufficient facts to support a claim and that the eighty-six disputed ballots were valid and properly counted. From this order comes the instant appeal, challenging the trial court's dismissal. We affirm.

## I. Standard of review

■ Appellant's first point on appeal challenges the trial court's order granting appellee Whitfield's motion to dismiss. This court reviews a trial court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff. *See Hames v. Cravens*, 332 Ark. 437, 440-41, 966 S.W.2d 244 (1998) (citing *Neal v. Wilson*, 316

Ark. 588, 595-96, 873 S.W.2d 552 (1994) (citing *Gordon v. Planters & Merchants Bancshares, Inc.*, 310 Ark. 11, 832 S.W.2d 492 (1992); *Battle v. Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989)); *Mid-South Beverages, Inc.*, 300 Ark. 204, 205, 778 S.W.2d (1989) (citing *Battle*, 298 Ark. 241))). Significantly, a trial judge must look only to the allegations in the complaint to decide a motion to dismiss. *Hames*, 332 Ark. at 441 (citing *Neal*, 316 Ark. at 596 (citing *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993); *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992)); *Mid-South Beverages, Inc.*, 300 Ark. at 205 (citing *Battle*, 298 Ark. 241))).

## II. Jurisdiction

▮ Based upon the face of King's complaint, the trial court concluded that it lacked jurisdiction because it determined that the action was not filed within twenty days of certification, pursuant to Ark. Code Ann. section 7-5-801 (Repl. 1993). Section 7-5-801(d) provides that:

> The complaint shall be verified by the affidavit of the contestant to the effect that he believes the statements to be true and shall be filed within twenty (20) days of the certification complained of.

In paragraph seven of his complaint, King alleged that:

> The Defendants Election Commission *certified* Sam Whitfield as being the candidate elected in this election *on November 3, 1998*, which certificate is error and improper as set out herein, and the Election Commission should have certified Plaintiff as the person who was elected.

(Emphasis added.) Apparently, the trial court concluded that King's reference to November 3, 1998, the day the general election was held, implied that that was also the date of certification. Although the record indicates that the certification date was November 17, 1998, the complaint fails to state sufficient facts for the trial court to determine that jurisdiction was properly alleged. Accordingly, the trial court properly dismissed the complaint for lack of jurisdiction.

### III. Failure to state a cause of action

King's second point on appeal contends that the trial court erred by finding that the complaint failed to sufficiently state a cause of action. In its letter opinion incorporated in the order of dismissal, the trial court noted that King failed to name the voters who allegedly cast illegal ballots and failed to allege the certified vote totals for each candidate or the vote differentials. The trial court concluded that King presented only bare allegations, warranting dismissal. We agree.

In paragraphs eight, nine, ten, and eleven of his complaint, King alleges that Nathan Ashwood mailed a total of eighty-eight ballots to the Phillips County Clerk that were unaccompanied by a certificate authorizing Ashwood to return the ballots. King also stated his intent to challenge each ballot individually, pursuant to Ark. Code Ann. section 7-5-411. Finally, King alleged that because the eighty-eight absentee ballots cast for appellee Whitfield were invalid, King would have a majority of the valid votes cast in the election.

We have repeatedly held that election statutes should be liberally construed to ensure compliance. *See Duennenberg v. City of Barling*, 309 Ark. 541, 832 S.W.2d 237 (1992); *see also LaFargue v. Waggoner*, 189 Ark. 757, 75 S.W.2d 235 (1934). Significantly, in *LaFargue*, we noted that "if there are sufficient facts stated to give the other party reasonable information as to the grounds of the contest, then the case should be tried on its merits." *LaFargue*, 189 Ark. at 768. Further, in *Gunter v. Fletcher*, 217 Ark. 800, 233 S.W.2d 242 (1950), we acknowledged that the purpose of the election laws was to facilitate, and not hinder by technical requirements, the quick initiation of election contests. *Gunter*, 217 Ark. at 802. As a general rule, we do not hold parties to the same strict technical accuracy as required in a civil pleading, and we will disregard technical objections. *Gunter*, 217 Ark. at 802-03 (citing *Robinson v. Knowlton*, 183 Ark. 1127, 1133, 40 S.W.2d 450, 452 (1931)).

In spite of our liberal construction, a review of our cases considering the sufficiency of allegations in an election-contest complaint reveals that we require some detailed information to sustain the complaint. *See McClendon v. McKeown*, 230 Ark. 521, 323 S.W.2d 542 (1959). For example, in *Gunter*, the complaint

alleged the total number of votes cast for each contestant, the names of each voter alleged to have cast an illegal ballot, and the township in which each had voted. *McClendon*, 230 Ark. at 522, 323 S.W.2d at 543. The complaint gave detailed information of the name and voting place of each person alleged to have cast an illegal ballot. *Id.* Significantly, it is not the trial court's duty, on its own initiative, to ask the names of persons alleged to have cast illegal ballots. Here, it remained King's responsibility to sufficiently allege a cause of action. *McClendon*, 230 Ark. at 524, 323 S.W.2d at 544. At a minimum, King should have alleged in the complaint the number of votes received by each candidate, so that it would appear, after deducting the alleged fraudulent votes from the number accredited to Whitfield, that King would have more votes than his opponent. *See McClendon*, 230 Ark. at 525, 323 S.W.2d at 544-45.

■ Although appellant asserts that he included the vote totals in the complaint, a review of the complaint demonstrates otherwise. In the absence of vote totals or differentials, the trial court could not conclude from the face of the complaint that, if the absentee votes were counted for King, the result of the election would actually have been different. Where, as here, a party fails to allege the specific facts necessary to contest the election and declare himself the winner, it is too late to subsequently amend his complaint by pointing to facts outside the complaint after the time for contesting the election has expired. *See Rubens v. Hodges*, 310 Ark. 451, 837 S.W.2d 465 (1992); *see also Wheeler v. Jones*, 239 Ark. 455, 390 S.W.2d 129 (1965).

■ In the instant case, King failed to set out a prima facie case essential to state a cause of action for an election contest and failed to inform either the opposing party or the trial court as to the specific facts creating a cause of action and vesting jurisdiction in the trial court. Treating the facts alleged in the complaint as true and viewing the complaint in the light most favorable to appellant, we, nevertheless, conclude that the trial court properly dismissed King's complaint.

GLAZE, BROWN, and SMITH, JJ., concur.

TOM GLAZE, Justice, concurring. I concur, and write to elaborate on the Arkansas law that controls election contests like the case before us. First, it must be emphasized that an

election contest is a statutory or special proceeding under Ark. R. Civ. P. 81. Rule 81 provides that the rules of civil procedure do not apply where a statute specifically creates a right, remedy, or proceeding that provides a different procedure. *See Rubens v. Hodges*, 310 Ark. 451, 837 S.W.2d 465 (1992). This court has also held that the procedure for contesting an election is purely statutory, and a strict observance of statutory requirements is essential to the exercise of jurisdiction by the court, as it is desirable that election results have a degree of stability and finality. *Reed v. Baker*, 254 Ark. 631, 495 S.W.2d 849 (1973). The *Reed* court further explained that the purpose of election contests is to aid the democratic processes upon which our system of government is based by providing a ready remedy whereby compliance with election laws may be assured *to facilitate*, not hinder by technical requirements, *the quick initiation and disposition of such contests*. (Emphasis added.) *Id.* at 634.

As can be discerned from our case law above, election contest procedures are uniquely designed to dispose of all questions or issues quickly so stability and finality can be reached, thus, permitting government to continue as it should. Accordingly, once election results are certified, a contestant must file his or her complaint questioning those results within twenty days of the certification. *See* Ark. Stat. Ann. § 7-5-806(d) (Repl. 1993). In construing § 7-5-806(d) (and its predecessor provision), this court has required that an election complaint must state a prima facie case and plead sufficient facts to give the other party reasonable information as to the grounds of the contest. *McClendon v. McKeown*, 230 Ark. 521, 323 S.W.2d 542 (1959); *see also* 26 Am.Jur.2d, Elections § 432 (1996). The *McClendon* court also noted that Arkansas law requires the contestant to name every alleged illegal voter against whom he proposes to offer proof when individual ballots are challenged as illegal. *Id.* footnote 3 at 524; *see also* 26 Am.Jur.2d Elections § 434 (1996) and 29 C.J.S. Elections § 268(2)(g) (1965).

In the instant case, appellant contestant Durwood King specifically stated that he was individually challenging 88 absentee ballots. Nonetheless, King failed to plead the names of those alleged illegal voters against whom he intended to offer proof. King relies on the case of *Gunter v. Fletcher*, 217 Ark. 800, 233 S.W.2d 242 (1950), which he contends relieves him of any burden to specify the names of alleged illegal voters in his complaint. Such contention is misplaced and is dispelled by the numerous election cases dealing with

this very subject matter. In fact, one needs only read *McClendon*, where this court fully discussed the *Gunter* decision and pointed out that the contestant in *Gunter* had specified in his complaint the name of each person alleged to have cast an illegal ballot. The *McClendon* court held that because the contestant, McClendon, failed to allege he had received a majority of the legal votes cast *or to name the persons whose votes he claimed were illegal*, his complaint failed to state a cause of action. In sum, the court concluded contestant McClendon had failed to set out a prima facie case and the essential allegations necessary to state a cause of action in an election contest. *McClendon*, 230 Ark. at 525, 323 S.W.2d at 545; to this same effect, *see Files v. Hill*, 268 Ark. 106, 594 S.W.2d 836 (1980) (complaint without any identification of either the vote or the voters does not contain sufficient factual allegations to state a cause of action); *Simonetti v. Brick*, 266 Ark. 551, 587 S.W.2d 16 (1979) (complaint which does not charge that any specific illegal vote was cast fails to state a cause of action and such a requirement places no [undue] burden on contestants to require them to state the names of the alleged illegal voters); *Cowger & Stewart v. Mathis*, 255 Ark. 511, 501 S.W.2d 212 (1973) (petition for contest of an election does not state a cause of action when it does not charge that any specified vote was illegally cast, or does not contain sufficient information which would identify any such illegal voter, and contains only generalities or conclusions of law to the effect that illegal votes were cast); *Jones v. Etheridge*, 242 Ark. 907, 416 S.W.2d 306 (1967); *Wheeler v. Jones*, 239 Ark. 455, 390 S.W.2d 129 (1965) (in order to state a cause of action, an election contestant must show that the outcome of the election would be changed if certain identified irregular votes cast for his opponent were disregarded).

As already mentioned, King failed to identify by name the 88 alleged illegal absentee voters in his complaint, and as a result, his complaint failed to state a cause of action. As pointed out by the majority opinion, King also was obliged by Arkansas precedent to state in his complaint the number of votes received by each candidate, so that it would appear, after deducting the alleged illegal votes from the number accredited to appellee Sam Whitfield, King would have more votes than Whitfield. *See Mason v. Peterson*, 238 Ark. 1069, 386 S.W.2d 286 (1965); *McClendon*, 230 Ark. 521, 525, 323 S.W.2d 542, 545. Here, King's complaint did not mention either his total amount of votes or Whitfield's vote total, but instead only

generally alleged that, if the illegal votes were not counted, King would have a majority of the valid votes cast. Such a general allegation fails to meet the requirements set out in our established case law and is an additional reason for dismissing King's complaint for failing to state a cause of action.[1]

Finally, it was suggested in oral argument that, even if King's complaint was deficient, such defect was cured because the circuit court allowed King to present his case on the merits at trial. This argument fails for two reasons. First, Whitfield objected to King's complaint and requested it be dismissed for failing to state a cause of action. The trial judge agreed with Whitfield's dismissal motion, but the judge still permitted King to introduce evidence on the merits of the case.[2] At the same time, the judge preserved Whitfield's objection to allowing any evidence since the judge had dismissed King's complaint. The judge obviously took this approach so that his dismissal ruling and decision on the merits both could be reviewed in one appeal. In short, Whitfield never waived the trial court's dismissal ruling made in his behalf, but instead the trial judge was trying to practice judicial economy in an election case that needed to be facilitated and expedited. There is a second reason why King's complaint could not be cured so he could have his case decided on the merits. This is not an Ark. R. Civ. P.12(b)(6) dismissal matter where the insufficiencies in the complaint are covered by our rules of civil procedure and, under such rules, can later be corrected. Once again, Arkansas law specifically covers this subject and does not allow an election contest complaint that was deficient when filed to be later amended and corrected to allege a cause of action after the twenty-day period for filing the complaint has elapsed. In *Wheeler*, 239 Ark. 455, 390 S.W.2d 129, the court affirmed the trial court decision not to allow the contestant to

---

[1] The trial court dismissed King's complaint for failing to state a cause of action, but also did so on the basis that King did not allege the correct date of certification of the election results. King's complaint alleged the election results were certified on November 3, 1998, and he filed his complaint on November 30, 1998 — seven days outside the required twenty-day statutory period. It was later determined that the certification date was actually November 17, 1998, which, if alleged correctly, would have shown King's complaint to be timely.

[2] In sum, King sought to prove that the absentee ballots that he challenged were cast in violation of Ark. Code Ann. § 7-5-411 (Supp. 1999), and because those ballots were illegal and cast in Whitfield's favor, they should be deducted from Whitfield's total, resulting in King having the most votes.

amend his complaint after the expiration of the twenty days allowed for filing of the contest. The court explained as follows:

> As we have seen, this complaint did not state a cause of action. To allow it to be amended in such a way as to state a cause of action would, in effect, permit the plaintiff to assert, for the first time, his cause of action after the expiration of the twenty days. *Such an amendment is not permissible.* (Emphasis added.)

*See also Cowger,* 255 Ark. 871, 501 S.W.2d 212; *Jones,* 242 Ark. 907, 416 S.W.2d 306.

Although Arkansas law controlling election contests, in my view, soundly supports the trial court's decision, dismissing King's complaint in this case, I think the General Assembly should review its statutory procedures in this area of the law. Finality and stability in our elections are essential ingredients of a democratic process, but so are. honesty, integrity, and legal exactness. Generally, the period is short between the time when officials are elected and certified and when they take their oath of office. Accordingly, our contest procedures are designed and written to put complaints of election irregularities to rest. Nevertheless, our election laws can be written to establish, encourage, and facilitate both finality *and* honesty in Arkansas elections.

Under existing law, Arkansas's abbreviated twenty-day period to file an election contest makes it is almost impossible to investigate and acquire sufficient proof to identify individual voters who allegedly cast illegal ballots. It is only in the rare race where a candidate or nominee loses by the narrowest of votes that one could accomplish such a feat and then still have the time to allege a prima facie cause of action. *Cf.* 26 AM.JUR.2d *Elections* § 434; 29 C.J.S. *Elections* § 268(2)(g). Hopefully, the General Assembly will address this important subject in its next session. As the law stands now, I agree with the majority court that the trial court correctly dismissed King's complaint.

ROBERT L. BROWN, Justice, concurring. I concur in the result, but I would reach the merits of the case and not dismiss King's complaint based on procedural technicalities. I would affirm because King did not prove that the two mailings of absentee ballots violate state law.

Today's opinion makes it vastly more difficult to contest an election, and that should not be. The majority does this by mandating that non-essential information be included in a complaint to state a cause of action. This runs counter to basic democracy and fairness. We have made this clear in the past in our cases. For example, in *Gunter v. Fletcher*, 217 Ark. 800, 802, 233 S.W.2d 242, 243 (1950); we said:

> The purpose of our statutes governing election contests is to aid the democratic processes upon which our system of government is based, by providing a ready remedy whereby compliance with the election laws can be assured. The purpose is to facilitate, not to hinder by technical requirements, the quick initiation of such contests.

I see no reason to deviate from this principle in the case before us.

The essence of Durwood King's complaint is as follows:

> 7. The Defendants Election commission certified Sam Whitfield as being the candidate elected in this election on November 3, 1998, which certificate is error and improper as set out herein, and the Election Commission should have certified Plaintiff as the person who was elected.
>
> 8. By mail, the County Clerk received in an envelope with the return address of Nathan Ashwood, Helena, Arkansas, 39 absentee ballots. These ballots were from individual voters and the certificate accompanying them indicated what (sic) the voter was mailing the ballot to the County Clerk and did not indicate that Nathan Ashwood was authorized to return them to the County Clerk.
>
> 9. Nathan Ashwood by mail sent to the Phillips County Clerk another envelope containing 49 absentee ballots of individual voters. The certificates accompanying these ballots in four instances were not marked as to how the ballots would be returned, and the remaining ballots indicated that the voter was returning them by mail.
>
> 10. Plaintiff challenged each ballot individually for the reason that it did not comply with and was in violation of Section 7-5-411, Arkansas Code Annotated.
>
> 11. Plaintiff states that these 88 ballots were all cast for Defendant Sam Whitfield and were illegal ballots as stated. If these

ballots were not counted Plaintiff would have a majority of the valid votes cast in this election for the position of Municipal Judge of the City of Helena, Arkansas.

The facts of the complaint were verified as true by King, and the complaint was filed on November 30, 1998.

## I. Timeliness of the Complaint

The majority first errs in dismissing King's complaint because it alleged an erroneous date for certification. The complaint gave the date of certification of the election results as November 3, 1998. The correct date was November 17, 1998. This is not in dispute. Indeed, the correct date was proved to the trial court at the hearing on January 12, 1999. The point is that the complaint was clearly filed within the 20-day time limit set out in Ark. Code Ann. § 7-5-801(d) (1987).

At oral argument before this court, the attorneys for King acknowledged that the date shown in the complaint was a drafter's error. For this court to dismiss a timely complaint for an election contest due to an error in the date, which everyone acknowledges was a mistake, runs contrary to any sense of justice and is at odds with the stated purpose in the majority opinion which is to facilitate election contests. By deciding this case on such a procedural technicality and by avoiding the merits, we are doing exactly what we said we would not do in *Gunter v. Fletcher, supra.*

## II. Stated Cause of Action

The majority also dismisses the complaint for failure to state election totals for each candidate and to identify the names of the illegal voters. Again, that precise evidence was supplied at the January 12, 1999 hearing. But regardless of that, I believe the complaint states a *prima facie* case, as required by Ark. Code Ann. § 7-5-802 (1987).

King alleged in his complaint:

(1)    that he should have been certified the winner of the election;

(2)    that Nathan Ashwood of Helena mailed in two batches of absentee ballots — one for 39 ballots and one for 49 ballots, for a total of 88 ballots;

(3)    that this mailing procedure violated § 7-5-411;

(4)    that the 88 ballots were all cast for Whitfield, and if they were not counted, King would have a majority of the votes.

What else is needed to state a cause of action? It appears to me that the complaint does so in clear and cogent fashion. The majority opinion relies on four cases to dismiss on technical grounds, all of which are distinguishable and one of which clearly supports my position that the merits should be reached in this case. *See Rubens v. Hodges*, 310 Ark. 451, 837 S.W.2d 465 (1992); *Wheeler v. Jones*, 239 Ark. 455, 390 S.W.2d 129 (1965); *McClendon v. McKeown*, 230 Ark. 521, 323 S.W.2d 542 (1959); *Gunter v. Fletcher, supra.*

In *Gunter v. Fletcher, supra,* we came down squarely on the side of reaching the merits in election contests and avoiding decisions based on procedural technicalities. In *Gunter,* the plaintiff alleged recomputed vote totals for the two candidates in his complaint. The total votes actually cast in the election were not given. The defendant demurred, and the trial court sustained the demurrer for failure to state sufficient facts. We reversed the trial court and held that giving the actual vote totals was not required. As already noted, we stated that the purpose of the election laws is to facilitate, and not to hinder by technical requirements the quick initiation of election contests. We added that the purpose in pleading in election contests was to give the other side "reasonable information as to the grounds of the contest...." *Gunter,* 217 Ark. at 802, 233 S.W.2d at 243, citing *LeFargue v. Waggoner,* 189 Ark. 757, 768, 75 S.W.2d 235, 240 (1934). We concluded that what the plaintiff set out was sufficient and that no genuinely useful purpose would be served by requiring the voting totals in the complaint. Yet, requiring voting totals is precisely what the majority opinion does in the instant case.

In a later case, we made it clear that a contestant must allege in the complaint that he would win if the disputed votes were eliminated. *See McClendon v. McKeown, supra.* In *McClendon,* the plaintiff refused to give the names of the contested voters *and* never expressly alleged that he would win if the illegal votes were not

counted. The complaint only alleged how many votes had been certified for each candidate and that 23 votes had been illegally cast. We pointed out that the plaintiff failed to give the names of those purported to have cast the 23 illegal ballots. Plus, he simply said if the votes are not counted, he "verily believes he will have received more votes" than his opponent. *McClendon*, 230 Ark. at 523, 323 S.W.2d at 545. From what I can tell he never alleged why those 23 votes were illegal. We held that these lapses in his complaint combined to show that he did not raise a *prima facie* case, and we agreed with the trial court that the complaint smacked of a fishing expedition to try to make a case by later discovery.

The *McClendon* facts are a far cry from the facts we have before us in the instant case. Here, King tells us what disputed votes are involved by referring to all of the votes in Nathan Ashwood's two absentee bulk mailings. He tells us the disputed votes total 88, and he cites statutory authority for why the votes are illegal. In short, he alleges definitely and with precision that without these votes, he would win.

In *Wheeler v. Jones, supra*, the plaintiff omitted from his complaint which candidate benefitted from the illegal votes. Instead, the complaint set out the total votes per candidate and then asserted that 52 named persons voted in an absentee box and were not qualified electors and that 196 named persons voted in precincts in which they did not reside. The trial court sustained a demurrer, and we affirmed. We held, for obvious reasons, that the complaint did not state a cause of action because the plaintiff did not allege whether the contested votes were cast for the winner or that the election results would be different if the votes were set aside. King's complaint is different. He states that without the contested absentee votes, he would win. The decision in *Wheeler v. Jones, supra*, does not control the instant case.

Finally, there is *Rubens v. Hodges, supra*, a case that is obviously inapposite. In *Rubens*, the complaint did not tell us for whom the disenfranchised voters would have voted. In that case, the victorious candidate for justice of the peace died before the election. Her opponent filed an election contest and alleged that the voters of one ward were entitled to vote for the JP position, but the ballots did not include that election. She asserted that of the 23 people voting in that ward, 9 wanted to vote for her. In another ward, voters were

directed to a machine where the race was omitted from the ballot. She alleged that 7 people wanted to vote for her in that ward. She claimed that with these 16 votes, she should be declared the winner. We refused to do so. We pointed out in our opinion that she did not allege how the other 14 people would have voted in the ward where 23 people could not vote. She also failed to allege how many other voters were directed to the wrong voting machine and how they would have voted. We concluded that she had not alleged sufficient facts to show the election results would have been different.

Here, King alleges that the total illegal absentee votes are 88, and that not counting them would make him the winner. Our fact situation is categorically different from *Rubens v. Hodges, supra,* and when all is said and done, there is no case which is on all fours with the facts of the case at hand.

### III. Bulk Mailing

Nevertheless, I would affirm the trial court's decision on the merits. The applicable statute at the time of the election read:

> (a) Absentee voting may be accomplished in one (1) of the two (2) following methods, and in no other manner:
>
> (1) By ballot cast my mail which must be received in the office of the county clerk of the county of residence of the voter not later than 7:30 p.m. on election day. However, absentee ballots applied for not later than thirty (30) days before the election, by qualified electors outside the United States on election day which are signed and dated by the voters no later than the day of the election and received by the county clerk no later than 5:00 p.m. ten (10) calendar days after the date of the election;

Ark. Code Ann. § 7-5-411 (1987). By its plain terms, there is no prohibition against bulk mailing of absentee ballots. King relies heavily on the case of *Roach v. Kirk,* 228 Ark. 958, 311 S.W.2d 525 (1958), which by *dictum* indicates that absentee ballots must be personally mailed. That was clearly not the holding in *Roach.* Moreover, that case predates Act 465 of 1969, which provides for casting ballots by mail and which does not require personal mailing.

If the General Assembly had wanted to do so, it could easily have required personal mailing by each absentee voter. It did not do so by Act 465 of 1969. In fact, the General Assembly did not amend § 7-5-411(a)(1) to require personal mailing until 1999 when it added this language: "The qualified elector shall personally mail his ballot, except that an administrator may mail the absentee ballots of a long-term care or residential care facility's residents in a single mailing." 1999 ARK. ACTS 1586 § 1. A personal mailing component cannot be read into the statute by the courts for elections that occurred prior to Act 1586 of 1999.

For that reason alone I would affirm.

SMITH, J., joins.