Joseph DEITSCH, et al. *v.* Frank TILLERY, et al.

91-297 833 S.W.2d 760

Supreme Court of Arkansas
Opinion delivered May 26, 1992

*Steve Napper* and *Robert McHenry*, for appellant.

*Matthews, Campbell & Rhoads*, by: *David R. Matthews*, for appellant.

JACK HOLT, JR., Justice. This appeal raises questions concerning tort liability, the scope of immunity from such liability under Arkansas' immunity statutes, and liability under 42 U.S.C. § 1983, as applied to school districts and their employees and local school board members.

The appellants, a group of named plaintiffs consisting of parents of children who attend Westside Elementary School, which is located in Rogers School District #30, and one employee of the school, filed suit against the defendants/appellees, school employees, past and present school board members, and the Rogers School District #30, alleging the appellees knew or should have known of the presence of friable asbestos in Westside Elementary School and failed and refused to correct the condition and to protect the students and staff from the dangers of exposure. The complaint specifies that during "spring break" in March 1990, 30,000 square feet of ceiling tile, containing asbestos, was improperly and negligently removed and, further, that for many years prior to the March exposure, the asbestos was agitated, causing loosening of the material and daily incidents of exposure. Three separate counts were alleged: 1) the tort of outrage; 2) negligence; and 3) liability under 42 U.S.C. § 1983.

The appellees responded to the appellants' complaint with a motion to dismiss based on Ark. R. Civ. P. 12(b)(6), failure to state a claim upon which relief could be granted.

Following a hearing, the trial court entered an order of dismissal as to all three causes of action. The court determined that the allegations in the complaint fell short of stating that the conduct complained of amounted to a tort of outrage as defined by Arkansas law. The negligence claim was dismissed pursuant to the statutory immunity afforded in Ark. Code Ann. § 21-9-301 (1987), and the § 1983 claim was dismissed upon a finding that the complaint did not sufficiently allege a custom or policy by the Rogers School District. The trial court also dismissed the appellants' claim for punitive damages since there was no substantive claim to which it could attach. The appellants now appeal.

We reverse the trial court's dismissal of the appellants' cause of action for the tort of outrage and negligence and affirm the dismissal of the appellants' § 1983 claim.

In considering a motion to dismiss under Rule 12(b)(6), the facts alleged in the complaint are treated as true and viewed in the light most favorable to the party seeking relief. *See Battle* v. *Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989); *McKinney* v. *City of El Dorado*, 308 Ark. 284, 824 S.W.2d 826 (1992). It is improper for the trial court to look beyond the complaint to decide a motion to dismiss, unless it is treating the motion as one for summary judgment. *Battle* v. *Harris, supra.* There is no mention by the trial court, here, that it considered the motion to dismiss as a motion for summary judgment, and it does not appear the trial court considered anything beyond the pleadings. Pleadings are to be liberally construed and are sufficient if they advise a defendant of his obligations and allege a breach of them. *Rabalais* v. *Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985). With these general principles in mind, we proceed to the appellants' challenges concerning the trial court's order of dismissal.

## I. TORT OF OUTRAGE

The appellants first argue that immunity from tort liability under Ark. Code Ann. § 21-9-301 (1987 and Supp. 1991), which provides that "[no] tort action shall lie against [school districts] because of the acts of their agents and employees," would not extend to intentional acts. It was alleged the appellees were aware of the nature of the asbestos material present in the school, and the regulations required in removing such material, but that they intentionally violated these regulations. This argument encompasses the first count of the appellants' complaint, which is that the acts of the appellees rose to the level of conduct actionable under the tort of outrage.

The trial court, in its letter opinion and in its decree, did not reach the issue of liability or immunity as to intentional torts as it held that the acts articulated in the complaint fell "woefully short" of stating a cause of action for the tort of outrage because the conduct was "not so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utter[ly] intolerable in a civilized society." We disagree.

The language cited by the trial court was first enunciated in *M.B.M. Co., Inc.* v. *Counce*, 266 Ark. 1068, 597 S.W.2d 92 (1980), and is now the accepted definition for outrage. Four

elements are needed to establish liability. It must be shown: (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency" and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable man could be expected to endure it. *Id.*

In their complaint, the appellants allege the appellees knew of the presence of specific rules and regulations for the removal of asbestos and "failed and refused" to follow such procedures. The complaint states the appellees "knowingly misrepresented and/or concealed the dangerous asbestos condition . . . in order to induce the school employees and students to attend and work at the school." It is further alleged the appellees had such knowledge of the proper procedures (or by the exercise of reasonable care and compliance with state and federal laws, should have known) at least by May 27, 1983, and that the appellees *did* have such knowledge by October 1988, following inspection of the school for asbestos. The alleged proper standards, comprising both federal and state regulations, were set out at length in the complaint. The appellants allege they have sustained, and continue to sustain, damages for emotional distress and fear, physical injury, and increased risk of serious injury in the future. Appellant, Delores Bartizal is alleged to have contracted throat cancer, proximately caused by exposure to the asbestos.

The wording of the complaint recited more than mere conclusory allegations, as it was required to do. *See McKinney* v. *City of El Dorado, supra.* The appellants do not allege simply that the appellees' conduct was "outrageous" or "willful and wanton," but that the appellees purposefully deceived the appellants, as to the condition of the asbestos, in order not to disrupt school routine.

▊ Although we have traditionally taken a narrow view of claims for the tort of outrage, *Ross* v. *Patterson*, 307 Ark. 68, 817 S.W.2d 418 (1991), and we do not comment upon the merits of such an action here; taking the facts alleged in the complaint as true, and in the light most favorable to the appellants, we hold

sufficient facts were at least alleged to state a cause of action for the tort of outrage.

■ By definition, the tort of outrage, also known as the intentional infliction of emotional distress (*see Ross* v. *Patterson, supra*), is an intentional tort. Appellants are correct that Section 21-9-301 does not provide immunity for the intentional acts of school districts and their employees, only their negligent acts. *Waire* v. *Joseph*, 308 Ark. 528, 825 S.W.2d 594 (1992). In addition, Ark. Code Ann. § 16-120-103(a) (Supp. 1991), which applies to school board members, states that immunity will not extend to intentional torts committed by such members.

Accordingly, the trial court erred in dismissing the appellants' claim of tort of outrage.

## II. NEGLIGENCE

The appellants next argue that despite the immunity afforded by Section 21-9-301 for acts of negligence, Ark. Code Ann. § 6-17-1113 (1987 and Supp. 1991) requires the Department of Education to procure insurance for such acts, thereby creating an exception to the grant of immunity. The appellants also cite *Bly* v. *Young*, 293 Ark. 36, 732 S.W.2d 157 (1987) for the proposition that a state employee can be liable for tortious acts committed in the course of his or her duty, to the extent the employee is already covered by liability insurance.

As an initial matter, the appellees argue that because the appellants did not raise the issue of insurance in their original complaint, the argument is waived on appeal. We disagree.

The issue of insurance was first raised at the hearing before the trial court. The court noted the complaint did not plead the issue and indicated this should be done and that it would allow the appellants the opportunity to do so. Five months later, the trial court filed its opinion letter in which it noted that although the insurance issue had been raised at the hearing, since there were no such allegations in the complaint, under Ark. R. Civ. P. 12(b)(6), it could not consider the matter. Thereafter the appellants filed an amended complaint, fully pleading the issue, shortly before the trial court filed its final decree. The final order did not address the matter and simply dismissed the negligence claim based on the immunity granted under Section 21-9-301.

Ark. R. Civ. P. 15(a) allows a party to amend its pleadings *at any time without leave of the court.* The rule provides, however, that upon motion by the opposing party, the trial court may strike the amendment or grant a continuance of the proceeding where the amendment would result in prejudice or undue delay. Here, the appellees did move to dismiss the amended and substituted complaint, but based their grounds on Rule 12(b)(6) for failure to state a claim upon which relief could be granted. No mention was made of prejudice or undue delay under Rule 15. Since the appellants filed their amended complaint prior to issuance of the final decree and no objection was made on the grounds stated in Rule 15(a), it necessarily follows that the matter was properly preserved.

On the merits, we recently addressed the issue of liability insurance coverage, with regard to school districts and their employees, in *Waire* v. *Joseph, supra.* In *Waire,* as here, the parent of a student brought a negligence claim against, among other parties, the school district and certain of its employees. At issue were the very questions concerning insurance that are now being asserted by the appellants and which were alleged in the amended and substituted complaint. Sections 6-17-1113 and 21-9-301 are set out in *Waire,* along with a more thorough discussion.

We first examined the above statutes in light of legislative intent and previous case law and concluded that Section 6-17-1113 "authorizes and directs" the department of education to establish a self-insurance fund or to procure insurance for school employees against acts or omissions "from which they have not traditionally been immune, i.e., civil rights claims . . . and *intentional* or malicious acts or omissions." 308 Ark. at 534, 825 S.W.2d at 598 (emphasis added). The statute does not require the procurement of insurance for acts of negligence. *Id.*

Appellants claim that the statute not only mandates the department of education to establish a self-insurance fund or to provide insurance for the appellees' negligent acts, but also for their intentional acts. We have decided the matter as to negligence and, at this time, we have no need to address whether the statute is mandatory as to intentional torts since the appellants pled, in their amended and substituted complaint, that insurance *had* been procured by the state under this statute. The complaint

thus states sufficient facts for recovery on this basis, as to the claim of damages for the tort of outrage.

 The *Waire* decision also reaffirmed our previous holdings that state employees are not immune from suit for *negligence*, to the extent the employees are covered by other viable liability insurance. *See also Carter* v. *Bush*, 296 Ark. 261, 753 S.W.2d 534 (1988). The amended and substituted complaint also sufficiently alleged the appellants' right to recover on this basis, listing the names of various insurance companies and policies believed to cover the appellees. We therefore reverse the trial court's dismissal of the negligence claim since the appellees may potentially be covered by other liability insurance.

## III. CIVIL RIGHTS CLAIM

For their third and final point, the appellants claim the trial court erred in dismissing their cause of action for recovery under 42 U.S.C. § 1983. We disagree and affirm the trial court's dismissal.

The appellants' complaint alleges that "the acts and omissions on the part of the Defendants as alleged herein have violated Plaintiffs' constitutional rights as protected by the 14th Amendment of the United States Constitution and accordingly said acts and omissions have violated 42 U.S.C. § 1983. . . ." The trial court held that the allegations in the complaint did not sufficiently allege a custom or policy by the Rogers School District #30 as the allegations concerned only one instance of failing to inform the public of the asbestos and one instance of negligent removal of the same.

The trial court's holding was based on a long line of cases beginning with the 1978 United States Supreme Court case of *Monell* v. *New York*, 436 U.S. 658 (1978) in which the court held that local governments can be sued directly under § 1983 if the alleged unconstitutional action implements or executes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Liability may also attach pursuant to governmental "custom", even though such a custom has not received formal approval. 436 U.S. at 691. The cornerstone of the court's holding is § 1983 itself, which refers to violations by persons acting "under color of any law, statute,

ordinance, regulation, custom or usage. . . ."

The appellants claim there was not one, but many, instances in which the appellees ignored the proper procedures for dealing with asbestos, citing the language in the complaint where it was alleged "there were dozens of separate instances of additional loosening of asbestos fibers . . . . [f]or example . . . when other sections of the asbestos containing ceiling tile was removed; where rain leaked through the roof and ceiling tile was then allowed to dry . . . . and when birds flew through the ceiling tiles causing constant agitation. . . ." We agree with the trial court that such actions simply do not amount to established policy or custom. Clearly, there were no written or official policies for dealing with the asbestos in the manner alleged, nor do we find the actions or omissions evidenced a custom. "Custom" is defined by Webster's New World Dictionary (2d ed. 1984) as "a usual practice or habitual way of behaving." The fact that the asbestos tiles may have been agitated at various times due to what appellants allege were either negligent or intentional violations of safety regulations, does not constitute a "custom" of such practices by the school district and its employees.

For the foregoing reasons, we reverse the trial court's dismissal of the appellants' claims for tort of outrage, negligence, and punitive damages, and remand these claims for further proceedings. We affirm the dismissal of appellants' § 1983 claim.

DUDLEY and HAYS, JJ., dissent.

NEWBERN, J., dissents in part and joins the dissenting opinion of HAYS, J., with respect to the tort of outrage.

GLAZE, J., dissents in part and joins the dissenting opinion of HAYS, J., with respect to the issue of negligence.

STEELE HAYS, Justice. I respectfully disagree with the majority and would affirm the order appealed from in all respects.

As to the tort of outrage, we have often stressed that ours is a fact pleading state and this complaint, as I read it, fails to allege facts which show the plaintiffs (appellants) are entitled to relief by the tort of outrage. The trial court's dismissal under Rule 12(b)(6) was entirely correct. We addressed an identical issue in *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985)

involving an action for breach of contract and for the tort of outrage against a religious body. Noting that no facts were pled entitling the plaintiffs to relief by the tort of outrage we wrote:

> Rule 12(b)(6) provides for dismissal of a complaint for "failure to state facts upon which relief can be granted." The two rules must be read together in testing the sufficiency of a complaint; *facts*, not mere conclusions, must be alleged. *Harvey* v. *Eastman Kodak Co.*, 271 Ark. 783, 610 S.W.2d 582 (1981). Since no facts were alleged regarding the tort, the trial court was right to dismiss the claim. Therefore, we need not reach the question of whether the appellees enjoy charitable immunity from tort actions.

This complaint is generally couched in the familiar phraseology of negligence: The defendants knew or should have known of the presence and hazards of asbestos, and they failed to take necessary steps to correct the condition or warn the plaintiffs of the dangers. The only added ingredients are a liberal interspersing of the words "intentional" and "outrage." But the complaint is lacking in those factual assertions from which it could be said the defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Smith* v. *American Greetings Corp.*, 304 Ark. 596, 804 S.W.2d 683 (1991). The complaint does allege that the defendants "knowingly misrepresented and/or concealed the dangerous asbestos condition. . . ." But that is palpably conclusory and not a statement in ordinary and concise language of *facts* showing that the plaintiffs are entitled to the relief afforded by the extreme and drastic remedy of the tort of outrage. Ark. R. Civ. P. 8.

What is essentially a negligence claim is not transformed into an intentional tort— assault, for example— by inserting the words "intentional" and "deliberate" at strategic points. If that were not so, most negligence claims could be converted to intentional torts merely by alleging the defendant "intentionally" drove his vehicle at an excessive rate of speed or on the wrong side of the road, etc.

Moreover, we have held that for a complaint to assert an

intentional tort it must be based upon an allegation that the intentional or deliberate act was *performed with a desire to bring about the consequences of the act. Miller* v. *Ensco, Inc.*, 286 Ark. 458, 692 S.W.2d 615 (1985); *Finch* v. *Swingly*, 42 A.D.2d 1035, 348 N.Y.S.2d 266 (1973).

If individuals, public officials, school boards and similar bodies protected by immunity from tort liability are compelled to defend asbestos cases under the rubric of outrage it will have extended the concept far beyond anything envisioned in *M.B.M. Company, Inc.* v. *Counce*, 266 Ark. 1068, 597 S.W.2d 92 (1980).

As to the count of negligence, appellants contend that despite the immunity afforded by Ark. Code Ann. § 21-9-301 (1987) for acts of negligence, Ark. Code Ann. § 6-17-1113 (1987 and Supp. 1991) requires the Department of Education to procure insurance for such acts, thereby creating an exception to the grant of immunity. The appellants cite *Bly* v. *Young*, 293 Ark. 36, 732 S.W.2d 157 (1987) for the proposition that a state employee can be liable for tortious acts committed in the course of his or her duty, to the extent the employee is already covered by liability insurance, issues we recently addressed in *Waire* v. *Joseph*, 308 Ark. 528, 825 S.W.2d 594 (1992).

In their original complaint the appellants did not allege that appellees were covered by liability insurance. They first raised the matter at the hearing before the trial court. The trial court noted the appellants did not plead negligence and indicated a willingness to afford them the opportunity to do so.

A full five months after the hearing appellants had still not amended their complaint. At that point, the trial court filed its opinion letter with the clerk of the court. The letter contained the court's findings and conclusions and instructed the appellees' attorney to prepare a written order consistent with the letter opinion. In finding that school employees were immune for their acts of negligence, the court noted that although the issue of insurance had been raised, there were no allegations in the complaint referring to such insurance, adding, "As we all know, I am not permitted to go outside of the complaint in ruling on a 12(b)(6) motion."

A few days after the filing of the opinion letter, and shortly

before the final order was filed, appellants amended their complaint to include the insurance issue. The final order incorporated the holdings of the opinion letter and dismissed the negligence claim, following which the appellees filed a motion to dismiss the amended and substituted complaint.

The appellants had five months to file their amended complaint and failed to do so. Thereafter, the trial court issued its ruling, based on the pleadings before it, which it was required to do. Although the trial court had not entered its formal order, the appellants' last-minute amendments of its complaint, only a few days before the final order was filed, could only have worked to the appellees' prejudice and resulted in an unjust delay of the proceedings. *See* Ark. R. Civ. P. 15(a). The dismissal of the appellants' claim for negligence at that point was not error.

DUDLEY, J., joins in this dissent.

NEWBERN, J., joins the part of this dissenting opinion concerning the failure to state facts to support a claim of outrage.

GLAZE, J., joins that part of this dissenting opinion concerning the failure to state facts to support the claim of negligence.