The Honorable Pat Pappas State Representative 2901 Willow Pine Bluff, Arkansas 71603
Dear Representative Pappas:
This official Attorney General opinion is rendered in response to your recent question regarding the insurance coverage that is mandated by Act 355 of 1993 [A.C.A. § 6-17-1113].
Act 355 of 1993 amended A.C.A. § 6-17-1113 to include additional specifically-designated school employees (including "school custodians, food service workers employed by public schools, bus drivers and mechanics employed by public schools") to the list of school employees for whom certain insurance coverage is to be provided under a program of coverage established by the Department of Education. You note that the Act does not mention coverage for automobiles, but that the program established by the Department of Education in 1993 (as reflected in documents attached to your request) does provide for special coverage for vehicles involved in accidents outside the state of Arkansas. You indicate that the Department's program had not previously provided for such coverage.
You have presented the following question:
 Was it the intent of Act 355 of 1993 to protect bus drivers for the errors and omissions in supervising children on their buses, or to provide out-of-state liability coverage for the 5,828 buses and approximately 2,200 auxiliary vehicles owned by public school districts of the state being driven by those persons identified in the statute?
It is my opinion that the purpose of Act 355 of 1993 was to provide a specified type of liability insurance coverage for certain designated school employees who were not previously covered under the provisions of A.C.A. § 6-17-1113. The purpose of A.C.A. § 6-17-1113, in turn, was to authorize the Department of Education to establish a program of insurance coverage for certain school employees to insure them against civil liability for acts or omissions in the performance of their official duties as school employees. More specifically, A.C.A. § 6-17-1113 states in full:
 (a) The State Department of Education is authorized and directed to establish a self-insurance fund or to negotiate for and procure a group or blanket policy or policies of insurance, or both, insuring school board members, school nurses, school secretaries, substitute teachers, authorized volunteers, school custodians, food service workers employed by public schools, bus drivers and mechanics employed by public schools, maintenance personnel employed by public schools, each employee of a public school district and each employee of the Arkansas School for the Deaf and the Arkansas School for the Blind who is required to hold a teaching certificate issued by the State Department of Education, each teacher's aide and each student teacher in a public school district or in the Arkansas School for the Deaf or the Arkansas School for the Blind, and each member of the dormitory staff of the Arkansas School for the Deaf or the Arkansas School for the Blind against civil liability for acts or omissions of each employee in the performance of his or her official duties as a school employee, including civil liability for administering corporal punishment to students, in the amount of two hundred fifty thousand dollars ($250,000) for each incident.
 (b) The premium on such policy or policies shall be paid annually out of funds in the Public School Fund that are set aside for distribution to the various school districts under Acts 1977, No. 384 [repealed].
 (c) The State Department of Education shall adopt appropriate rules and regulations necessary to carry out the purposes of this section.
A.C.A. § 6-17-1113. Act 355 of 1993 expanded the list of employees to whom A.C.A. § 6-17-1113 will apply.
The Arkansas Supreme Court interpreted A.C.A. § 6-17-1113 in Waire v.Joseph, 308 Ark. 528, 825 S.W.2d 594 (1992), specifically stating the purpose of the statute. The court described the purpose of A.C.A. §6-17-1113 as follows:
 This court interprets Ark. Code Ann. 6-17-1113 to authorize and direct ADE to establish a self-insurance fund or procure insurance policies to insure school district employees against acts or omissions from which they have not traditionally been immune, i.e., civil rights claims under federal legislation and intentional or malicious acts or omissions.
Waire, 308 Ark. at 534. The court specifically held that A.C.A. §6-17-1113 does not contemplate the provision of insurance coverage for negligence. Accord, Deitsch v. Tillery, 309 Ark. 401, 833 S.W.2d 760
(1992).
Both the language of A.C.A. § 6-17-1113 itself and the language of the Arkansas Supreme Court describing the purpose of the insurance coverage to be provided pursuant to A.C.A. § 6-17-1113 are sufficiently focused to be able to encompass coverage for acts or omissions of school employees committed in connection with the operation of automobiles, if such acts or omissions give rise to claims against which school employees have not been historically immune. This coverage clearly is not equivalent to motor vehicle insurance coverage in the traditional sense. Rather, it is limited to coverage for the purpose set forth in A.C.A. § 6-17-1113 and described by the court. The Department of Education therefore did not exceed the scope of its authority by including such coverage in the program that it established pursuant to A.C.A. § 6-17-1113 and Act 355 of 1993.
As you have noted in your correspondence, a separate program of traditional motor vehicle insurance coverage is administered by the State Board of Education pursuant to The School Motor Vehicle Self-Insurance Act of 1991 [A.C.A. § 6-21-701—711.]
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB:SBA/cyh