United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
Nos. 97-1505EA, 97-1509EA

|  | * |  |
|---|---|---|
| _____ | * | |
| No. 97-1505EA | * | |
| _____ | * | |
| | * | |
| Laura Berry, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Jay L. Oswalt; Jay Blankenship; | * | |
| Warden Virginia W. Wallace; | * | |
| Larry Norris, Director; D.D. Cook; | * | |
| Katherine Green; Kevin Murphy; | * | On Appeal from the |
| C.O.-1 Wright; C.O.-1 R. Reed; and | * | United States District Court |
| Arkansas Department of Correction, | * | for the Eastern District |
| | * | of Arkansas. |
| Appellees. | * | |
| _____ | * | |
| | * | |
| No. 97-1509EA | * | |
| _____ | * | |
| | * | |
| Laura Berry, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Randall K. Reed, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: January 15, 1998

Filed: May 8, 1998
_____

Before RICHARD S. ARNOLD,[1] Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and SACHS,[2] District Judge.
_____

RICHARD S. ARNOLD, Chief Judge.

Laura Berry is an inmate at the Tucker Women's Unit ("Tucker") of the Arkansas Department of Corrections (ADC). She alleged rape by Jay Oswalt, a correctional officer at Tucker, and sued him for violation of her constitutional rights under 42 U.S.C. § 1983 (1994), and for the tort of outrage under Arkansas law. She also sued Virginia Wallace, the warden of Tucker, and Larry Norris, the director of the ADC, for Oswalt's conduct.[3] Further, she alleged that she had been sexually harassed by Randall Reed, also a correctional officer at Tucker, and sued him for violation of her constitutional rights and for the tort of outrage. The District Court granted summary judgment for Wallace and Norris. In a jury trial, Berry prevailed against Oswalt and Reed. Against each defendant, the jury awarded separate damages for violation of Berry's constitutional rights and the tort of outrage, as well as punitive damages. The

_____

[1]The Hon. Richard S. Arnold stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998. He has been succeeded by the Hon. Pasco M. Bowman II.

[2]The Hon. Howard F. Sachs, United States District Judge for the Western District of Missouri, sitting by designation.

[3]Berry also sued other ADC employees for conduct related to the alleged assault by Oswalt, but does not appeal the disposition of their cases.

Court eliminated the awards for outrage, finding them to be duplicative of the § 1983 awards.

Berry appeals the Court's reduction of her damages awards. She also appeals the grant of summary judgment as to her claims against Wallace and Norris. On cross-appeal, Reed seeks entry of judgment in his favor or a new trial.

We reverse the Court's reduction of Oswalt's liability for damages. We affirm the grant of summary judgment to Wallace and Norris. As to Reed, we vacate the judgment and remand his case for a new trial.

## I. Reduction of Damages Against Oswalt

We state the facts in the light most favorable to the verdict. On November 10, 1993, Berry was raped by Oswalt at Tucker, under threat of disciplinary action and physical violence. When she informed Oswalt on January 3, 1994, that she thought she was pregnant, he attempted to make her abort the pregnancy by forcing her to take quinine and turpentine. Under further threat, he instructed her to conceal the pregnancy and to blame another officer, Reed, if necessary. Berry sued Oswalt for violation of her constitutional rights and for the tort of outrage.

After a three-day trial, the jury found for Berry against Oswalt on both her 42 U.S.C. § 1983 claim and her state tort claim. It awarded her compensatory damages of $40,000 on the former and $25,000 on the latter, and $15,000 in punitive damages. However the District Court eliminated the award for outrage, finding that "the compensatory damage awards under theories of § 1983 and the tort of outrage amounted to a double recovery for the plaintiff on the same conduct by defendant[ ] Oswalt . . .." Letter to Plaintiff's and Defendants' Lawyers (Dec. 10, 1996). We reverse.

The tort of outrage and the violation of constitutional rights are legally distinct claims. To prove outrage, a plaintiff must show that "(1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was 'extreme and outrageous,' and was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community'; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable man could be expected to endure it." Deitsch v. Tillery, 309 Ark. 401, 406, 833 S.W.2d 760, 762 (1992) (citation omitted). In comparison, to prove an Eighth Amendment violation under § 1983, a plaintiff must show "as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997). This proof does not require "significant injury." Hudson v. McMillian, 503 U.S. 1, 8 (1992). A § 1983 plaintiff therefore does not have to show "emotional distress . . . so severe that no reasonable man could be expected to endure it." A jury reasonably could have found that Oswalt's conduct constituted a violation of Berry's constitutional rights, but fell short of outrage. We defer to this jury's finding that Berry had proved the separate elements of both claims.

The District Court carefully warned against confusion of the two claims, in the jury's determination of both liability and damages. Each verdict form included, in capital letters and bold print, the instruction "Remember to award damages applicable to this claim only." Appellant's App. at 300-01. The Court read the forms to the jury. It explicitly cautioned jury members to avoid duplication: "Now, you are to award damages only as it applies to each of these individual claims on the verdict. That is, don't duplicate your awards if you find for the plaintiff or find for the plaintiff against more than one defendant. You are to consider each of these claims separately not only as to the liability but to the damages. And if you found in favor of the plaintiff against an individual defendant, then you consider only the damages that are applicable to that particular claim . . .." Trial Tr. at 666. The Court's emphasis that the claims were to

be considered separately, as well as the difference in the actual amounts that the jury awarded for each, support our conclusion that the jury apportioned Berry's total damages between the two theories and did not allow a double recovery. We therefore reverse the District Court's elimination of the outrage award. On remand, a judgment fully effectuating the jury's verdict against Oswalt must be entered.

## II. *Summary Judgment for Norris and Wallace*

Berry claimed that Warden Wallace and Director Norris were also liable for Oswalt's alleged assault.[4] The District Court rejected this argument on summary judgment. We affirm.

Berry asserted that Wallace and Norris had known of the risk to her posed by Oswalt, relying on Norris's statements that he had long been concerned about men guarding women, and that it was possible that he had heard of complaints of male guards sexually abusing women inmates. She alleged that Wallace and Norris had failed to implement precautionary measures against sexual misconduct by guards, there being neither policies specifically addressing such misconduct, nor a systematic method of identifying and tracking complaints of such misconduct. She also relied on the persistence of rumors of abuse as evidence of Wallace's and Norris's condoning such abuse.

To establish that a prison official acted with deliberate indifference to a prisoner's safety in violation of the Eighth Amendment, a plaintiff must show that the official was aware of facts from which an inference of substantial risk could be drawn,

---

[4]Originally, Berry also argued that prison officials retaliated against her after she complained about Oswalt, and that Norris and Wallace were liable for these actions as well. The District Court held that the disciplinary actions taken against her were justified and her allegations of verbal harassment unfounded. It thus dismissed her retaliation claims. Her appeal does not rely on this theory of liability.

and further that he or she actually drew that inference. Farmer v. Brennan, 511 U.S. 825, 835-36 (1994). Assuming Berry's factual allegations to be true, they amount only to general concern about men guarding women, not an awareness that Tucker guards posed a "substantial risk" to Tucker inmates, or to Berry specifically. While Berry did allege two other inmate pregnancies at Tucker, she did not contend that they had resulted from sexual misconduct by Tucker guards. We therefore agree with the District Court's statement that "[w]hile [the] undisputed facts reflect that ADC officials might be found negligent, they do not show that the officials had a culpable state of mind as defined in Farmer." Order of Dec. 5, 1996, at 10.

Upon the Court's grant of summary judgment and after the trial, Berry filed a motion to supplement the record, under Federal Rule of Civil Procedure 15, and for reconsideration of summary judgment, under Federal Rule of Civil Procedure 60. She asked that the Court take notice of the testimony and exhibits that had been presented at trial, relating to other instances of sexual misconduct by Tucker guards. The Court denied her motion, and we affirm.

Federal Rule of Civil Procedure 15 authorizes district courts to accept supplemental pleadings "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). Rule 60 authorizes district courts to grant relief from judgments because of "newly discovered evidence," among other reasons. Fed. R. Civ. P. 60(b). Neither rule contemplates the type of facts that Berry sought to introduce: facts that were available for discovery and inclusion in her submissions when Berry first responded to the defendants' summary judgment motion. We therefore affirm the District Court's denial of Berry's motion to supplement the record and for reconsideration of summary judgment.

### III. Verdict Against Reed

In addition to assault by Oswalt, Berry also alleged sexual harassment by another officer, Reed. Berry alleged that Reed had attempted to perform nonroutine patdowns on her, had propositioned her for sex, had intruded upon her while she was not fully dressed, and had subjected her to sexual comments. She sued him under § 1983 and for the tort of outrage. The jury found for Berry and awarded damages against Reed totaling $40,000. On cross-appeal, Reed challenges the jury's verdict on grounds of error in the Court's evidentiary rulings and insufficient evidence.

### A. Evidence of Reed's Conduct Toward Other Inmates

Reed disputes the Court's admission, on multiple occasions and over numerous objections, of evidence of prior uncharged sexual misconduct by Reed. This evidence included the testimony of other women inmates. The Court admitted the disputed evidence in two stages. First, it allowed Reed to be questioned about his prior conduct. Second, it allowed others to testify for the purpose of "impeaching" Reed's testimony. We hold that the Court abused its discretion. We address the testimony of one inmate, Tammie Marino-Kompe, as the most extreme example of the evidentiary errors that we believe cumulated to render the trial unfair to Mr. Reed.

On direct examination of Reed, Berry's lawyer attempted to elicit information about other instances of misconduct. The Court found that such testimony was not relevant as direct evidence, but allowed it for "impeachment" purposes. The statements on which impeachment was allowed were Reed's deposition statements that he was "not . . . aware of" any other sexual-misconduct allegations against him. Cross-Appellant's App. at 40. Reed was asked about numerous instances of sexual misconduct. He denied the allegations. Regarding Kompe, Reed denied arranging for her to have sex with another inmate and being present during that incident. Trial Tr. at 169-70.

Other witnesses were then also allowed to testify regarding Reed's conduct toward other inmates, for the purpose of "impeaching" the denials Reed had made on direct examination. Kompe testified as follows:

Q: Now, as to Officer Reed was there a time when you had an unwelcome sexual encounter with somebody and Officer Reed was present?

A: Yes.

Q: Were you raped?

A: Yes.

When Reed's lawyer objected on grounds of relevance, the Court gave the jury a limiting instruction that Kompe's testimony "goes only to the credibility of Mr. Reed." Trial Tr. at 208.

The disputed evidence was emphasized in Berry's closing argument:

You have heard testimony from Randall Reed who said, "I would never do such a thing" and we even brought in the ADC's own people who in their investigation said, "Yeah, we think he lies and we think he was lying about that," and we produced the document that said, "I would never do that. Never been accused of any of that." And he told me that under oath, and then we come to find out there is a long litany, laundry list of things that he's accused of doing from sexual harassment, to verbal harassment, to sexual innuendo, to arranging sex. You remember that one: arranging sex between inmates. And what did Tammy Marino-Kompe tell you about? That's exactly what happened to her. She got raped by an inmate while [Reed] stood guard at the door. Is that the way we run a prison?

-8-

Trial Tr. at 677-78.

We address first of all the reasoning given by the District Court in admitting this and similar testimony. The Court stated that the evidence was admissible for the purpose of "impeaching" Reed's testimony that he was not aware of accusations of misconduct towards other inmates (or at least had not been aware of them when his deposition was taken), and that he had not committed any such misconduct. The Court also told the jury that the evidence should be considered only on the issue of Reed's credibility. The evidence in question, however, does not fit the definition of "impeachment." That term refers to matters like the bias or interest of a witness, his or her capacity to observe an event in issue, or a prior statement of the witness inconsistent with his or her current testimony. The evidence in question here was of a fact directly in issue (according to plaintiff's theory of the case): whether Reed had harassed or otherwise misbehaved with respect to other women inmates. In addition, the evidence would not have been admissible even if it had been true impeachment evidence. "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime . . . , may not be proved by extrinsic evidence." Fed. R. Evid. 608(b).

So the real issue is whether the evidence in question -- for example, that Reed conspired with a male inmate to effectuate the latter's rape of Ms. Marino-Kompe -- was admissible as substantive evidence of a relevant fact legitimately in issue. The issue requires us to apply Fed. R. Evid. 404(b).[5] On this point we agree with the District Court, which held that it was not. Rule 404(b) provides that evidence of prior bad acts, though inadmissible to show that a person acted in conformity with the prior act, may be admissible for other purposes, such as proof of motive, opportunity, intent,

---

[5]Because Berry has not argued that the evidence was admissible under Rule 415 (Evidence of Similar Acts in Civil Cases Concerning Sexual Assault or Child Molestation), we do not address that question here.

-9-

and absence of mistake or accident. Fed. R. Civ. P. 404(b). Evidence is admissible under Rule 404(b) if it is "(1) relevant to a material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the [event at issue]." United States v. Aranda, 963 F.2d 211, 215 (8th Cir. 1992) (citation omitted).

Berry asserts that Kompe's testimony, and other evidence of sexual misconduct by Reed, was relevant to show intent to harass and absence of mistake. However, Kompe's testimony was highly inflammatory, creating an "undue tendency to suggest decision on an improper basis, commonly . . . an emotional one." See United States v. Dennis, 625 F.2d 782, 796 (8th Cir. 1980) (citation omitted). The act alleged by Kompe -- facilitating an inmate-on-inmate rape -- was not "similar in kind" to the acts alleged by Berry -- verbal abuse, propositioning, unnecessary and selective patdowns. Its probative value as to Reed's conduct toward Berry was "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . .." Fed. R. Evid. 403. The District Court was therefore correct to hold the evidence inadmissible under Rule 404(b).

Berry's best argument is that evidence of other acts of harassment is admissible by analogy to a line of employment-discrimination cases in this Circuit. In Estes v. Dick Smith Ford, Inc., 856 F.2d 1097, 1104 (8th Cir. 1988), for example, we held that evidence of prior acts of discrimination on the basis, for example, of race should normally be freely admitted in cases alleging racial discrimination in employment. The same rationale of course would apply in gender and other sorts of employment-discrimination cases. The issue in such cases, however, is motive. There is no doubt that certain acts occurred, for example, a firing or a failure to hire. The question is why they occurred. The present case is different. The primary question is whether Reed did what Berry claims (e.g., propositioning her), not his motive in doing so. A guard who propositions an inmate cannot have a motive that the law would recognize as proper. When the question of admissibility is looked at in this way, we think the answer is

-10-

clear.  If the question at issue is whether Reed asked Berry for consensual sex, the relevance of Reed's having aided the rape of Kompe is slight at best.  And the tendency towards unfair prejudice, as we have said, is very great.

## B.  Sufficiency of the Evidence

Reed argues that Berry proved neither the objective pain nor the subjective state of mind necessary to sustain an Eighth Amendment claim, and appeals the Court's denial of his motion for judgment as a matter of law.  See Freitas v. Ault, 109 F.3d at 1338.  But from the evidence presented at trial, reasonable jurors could have differed as to the conclusion that could be drawn.  We therefore affirm.  See Sherlock v. Quality Control Equip. Co., 79 F.3d 731, 735 (citation omitted).  Reed's actions (if Berry is believed) were repeated and improper, an abuse of the power he held over inmates.

Reed first contends that Berry did not allege sufficient injury.  A § 1983 plaintiff must allege threatened or actual injury, O'Shea v. Littleton, 414 U.S. 488, 494 (1974), and Berry has done that.  Berry alleged that Reed had attempted nonroutine patdowns and had verbally harassed her.  She presented evidence that these acts had caused her fear and frustration.  The objective-pain component of Eighth Amendment analysis does not require significant injury.  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  Rather, it was within the jury's discretion to find that Reed's alleged harassing behavior was "harmful enough," ibid. (citation omitted), to be a violation of the Eighth Amendment.

We also reject Reed's contention that Berry's allegations failed to establish the necessary subjective state of mind for an Eighth Amendment violation.  The conduct alleged of Reed evidenced intent to initiate sexual contact with Berry, a state of mind more consistent with the "obduracy and wantonness . . . that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause," than " inadvertence or error

-11-

in good faith . . ..” <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).  We therefore decline to disturb the jury's verdict.

## *IV.*

We reverse the District Court's reduction of damages against Oswalt and reinstate the original award, which included $25,000 for the tort of outrage and totaled $80,000. We affirm its grant of summary judgment to Wallace and Norris.  We vacate the jury verdict against Reed and remand his case for retrial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.