Jannetta L. FUQUA and Beverly Hayes *v.* Dan FLOWERS

00-230                                          20 S.W.3d 388

Supreme Court of Arkansas
Opinion delivered July 7, 2000

*John B. Plegge*, Judge;

*McHenry & McHenry Law Firm*, by: *Connie Grace* and *Donna McHenry*, for appellants.

*Robert L. Wilson* and *Mark J. Whitmore*, for appellees.

Tom Glaze, Justice. This appeal arises from the trial court's dismissal of a complaint filed by Jannetta Fuqua and Beverly Hayes against Dan Flowers, Director of the Arkansas State Highway and Transportation Department, Francis Jones, a district sign foreman for the Department, and the Department itself (collectively referred to as ASHTD or the Department). Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(1), as the appeal asks us to interpret the sovereign immunity provisions of the Arkansas Constitution. We find no error, and we affirm the trial court's decision.

The facts underlying this case are straightforward. Fuqua and Hayes were driving on Arkansas State Highway 124 in Conway County about 9:50 p.m. on August 26, 1995. Fuqua had never driven on Highway 124 before, and she was unfamiliar with the road. As they approached the intersection of Highway 124 and Highway 9, there was no stop sign present, so Fuqua continued through the intersection. Unfortunately, however, Highway 124 was supposed to have a stop sign, and as Fuqua crossed Highway 9, her car was struck by one driven by Stephanie Ward. Fuqua and Hayes were both seriously injured, and Fuqua, who was six months pregnant, suffered a miscarriage.

The missing stop sign had been reported to the Arkansas State Highway and Transportation Department two days earlier, on August 24, by Tim Honeycutt, crew leader for that area. Earlier in

the day on August 26, at approximately 12:20 that afternoon, there had been another accident at that same intersection.

Fuqua and Hayes filed suit against the Department in Pulaski County Circuit Court, alleging that the failure of the Department to replace the stop sign amounted to the tort of outrage, and asserting that the defendants' actions constituted wanton and reckless disregard, "equivalent to malice," of the plaintiffs' safety.[1] The defendants moved to dismiss the lawsuit pursuant to Ark. R. Civ. P. 12(b)(1) and (6), stating that the trial court lacked subject matter jurisdiction because of sovereign immunity and that the plaintiffs had failed to state a claim for relief. After a hearing, the trial court dismissed the complaint, finding that sovereign immunity barred the suit.

■ This court reviews a trial court's decision on a motion to dismiss by treating the facts alleged in the complaint as true and viewing them in the light most favorable to the plaintiff. *King v. Whitfield*, 339 Ark. 176, 5 S.W.3d 21 (1999); *Neal v. Wilson*, 316 Ark. 588, 873 S.W.2d 552 (1994). Significantly, a trial judge must look only to the allegations in the complaint to decide a motion to dismiss. *Id.*; *see also Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992).[2]

■■ The Arkansas Constitution, art. 5, § 20, expressly forbids suits against the state by declaring that "[t]he State of Arkansas shall never be made defendant in any of her courts." In addition, when a suit is filed against employees of the state, Ark. Code Ann. § 19-10-305(a) (Supp. 1999) provides them with immunity from civil liability for non-malicious acts occurring within the course of their employment. *Beaulieu v. Gray*, 288 Ark. 395, 705 S.W.2d 880 (1986). To determine whether a suit against a state agency or a state employees is in reality a suit against the State, the court has employed the standard set out in *Page v. McKinley*, 196 Ark. 331, 118 S.W.2d 235 (1938):

---

[1] Fuqua and Hayes had previously filed suit in federal district court, asserting that ASHTD had violated their civil rights and their substantive due process rights; the federal court dismissed that complaint with prejudice. An ancillary state claim for outrage was dismissed without prejudice.

[2] Although the appellants argue that the trial judge considered matters outside the pleadings in reaching his decision, thus requiring us to review this as though it were a motion for summary judgment, the record fails to support this contention.

[W]here a suit is brought against an officer or agency with relation to some matter in which defendant represents the state in action and liability, and the state, while not a party to the record, is the real party against which relief is sought so that a judgment for plaintiff, although nominally against the named defendant as an individual or entity distinct from the state, will operate to control the action of the state or subject it to liability, the suit is in effect one against the state and cannot be maintained without its consent.

*Beaulieu*, 288 Ark. at 398, 705 S.W.2d at 881 (quoting *Page, supra*).

■ Fuqua and Hayes sued the Department, an agency of the State, and Flowers and Jones in their capacities as employees of the State; as plaintiffs, they sought damages in the amount of $100,000 each. Thus, there can be no question that this is a suit against the State, its officers and employees.

■ As already discussed, however, sovereign immunity presents a complete bar to suits against the State. *See Cross v. Arkansas Livestock & Poultry Comm'n*, 328 Ark. 255, 943 S.W.2d 230 (1997) (doctrine of sovereign immunity is "rigid and . . . may be waived only in limited circumstances"), and, under § 19-10-305(a), state officers and employees are statutorily protected by sovereign immunity. More particularly, this court has held that such officers and employees acting without malice within the course and scope of their employment are immune from an award of damages in litigation. *Grine v. Board of Trustees*, 338 Ark. 791, 2 S.W.3d 54 (1999). Thus, for a plaintiff to counter an assertion of sovereign immunity, he or she must allege sufficient facts in his or her complaint to support the claim of malicious conduct by the defendant. *Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998). It is this exception for malicious acts on which Fuqua and Hayes attempted to base their complaint, as they alleged that the Department knew, or should have known, that its failure to replace the stop sign could naturally and foreseeably result in death or serious bodily injury through automobile accidents.

■ This court, however, has defined malice as something more: "It is true that in law malice is not necessarily personal hate. It is rather an intent and disposition to do a wrongful act greatly injurious to another." *Satterfield v. Rebsamen Ford, Inc.*, 253 Ark. 181, 185, 485 S.W.2d 192, 195 (1972); *see also Stine v. Sanders*, 66 Ark. App. 49, 987 S.W.2d 289 (1999). Malice is also defined as

"the intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent. . . . A conscious violation of the law . . . which operates to the prejudice of another person. A condition of the mind showing a heart . . . fatally bent on mischief." *Black's Law Dictionary*, 956–57 (6th ed. 1990). Although the complaint alleges an evil intent in the acts or omissions of the Department, a bare allegation of willful and wanton conduct will not suffice to prove malice. *Beaulieu*, 288 Ark. at 399, 705 S.W.2d at 882.

Further, the two women seem to have modeled their complaint after tort-of-outrage language alleged in *Deitsch v. Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992), in which this court held that intentional torts overcome the immunity extended to State officers and employees. The court in *Deitsch* stated that summary judgment was improper in an outrage suit against a school district because the complaint "recited more than mere conclusory allegations[.]" *Deitsch*, 309 Ark. at 406, 883 S.W.2d at 762. In that case, a group of plaintiffs including teachers and students filed a complaint alleging outrage and negligence against the Rogers School District #30 and the school board, alleging that the school knew or should have known of the presence of friable asbestos in Westside Elementary School, and failed and refused to correct the condition and to protect the students and staff from the dangers of exposure. The school district moved for summary judgment, contending that they were statutorily immune from suit, and the trial court granted the motion.

■ This court disagreed and reversed the trial court, based on the facts as alleged in the plaintiffs' complaint. The plaintiffs in *Deitsch* had asserted that the school knew of the presence of asbestos and of specific rules and regulations regarding its removal, and they cited the particular federal and state standards dealing with that subject. Further, the complaint stated that the school had "knowingly misrepresented and/or concealed the dangerous asbestos condition . . . *in order to induce the school employees and students to attend and work at the school.*" *Id.* (Emphasis added.) These factual allegations compelled the result in *Deitsch*. The *Deitsch* court stated that the plaintiffs did not allege simply that the conduct of the defendant school district and its officers and employees was "outrageous" or "willful and wanton," but that the defendants purposefully deceived

the plaintiffs as to the condition of the asbestos, in order not to disrupt school routine. *Id.*

In the instant case, Fuqua and Hayes argue that they have alleged sufficient facts to support their claim for outrage, and indeed, their complaint does assert that the defendants violated federal and state highway safety statutes. However, in order to sustain an outrage claim, a plaintiff must prove the following four elements, most recently stated in *Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000):

> . . . (1) [T]he actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was "extreme and outrageous," was "beyond all possible bounds of decency," and was "utterly intolerable in a civilized community"; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997). The type of conduct that meets the standard for outrage must be determined on a case-by-case basis. *Hollomon v. Keadle*, 326 Ark. 168, 931 S.W.2d 413 (1996). This court gives a narrow view to the tort of outrage, and requires clear-cut proof to establish the elements in outrage cases. *Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996). Merely describing the conduct as outrageous does not make it so. *Renfro v. Adkins*, 323 Ark. 288, 914 S.W.2d 306 (1996). Clear-cut proof, however, does not mean proof greater than a preponderance of the evidence. *Croom*, 323 Ark. 95, 913 S.W.2d 283.

*Crockett*, 341 Ark. at 564. *See also Travelers Ins. Co. v. Smith*, 338 Ark. 81, 991 S.W.2d 591 (1999); *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997); *Brown v. Fountain Hill Sch. Dist.*, 67 Ark. App. 358, 1 S.W.3d 27 (1999).

The difference between the women's complaint and that in *Deitsch* is that the conduct complained of here lacks the kind of intentional conduct that was present when the school district knowingly misrepresented the condition of the asbestos in order to induce the students and staff to attend that school. Here, no action was taken intentionally to misrepresent or conceal a dangerous condition, and there was no proof of any intent to cause harm. The failure of the Department to replace the stop sign was arguably negligent, and perhaps it should have known that an accident was

likely if the stop sign was not replaced. Nonetheless, the conduct does not meet the standard of being "extreme and outrageous" and "utterly intolerable in a civilized society," as it must to sustain a claim for outrage.

■ Ultimately, because Fuqua and Hayes were unable to demonstrate that the defendants acted maliciously, sovereign immunity bars the suit, and the trial judge properly granted the defendants' motion to dismiss. However, we do note that the two women are not entirely without a remedy. The State Claims Commission exists to provide relief in the event of a claim against the state and its agencies. *See* Ark. Code Ann. § 21-9-201 *et seq.* (Repl. 1996 and Supp. 1999); *Fireman's Ins. Co. v. Arkansas State Claims Comm'n*, 301 Ark. 451, 784 S.W.2d 771 (1990) (Commission has exclusive jurisdiction over all claims against the state and its agencies, departments and institutions).

For the reasons above, we affirm.

CORBIN, J., not particpating.